HANLEY, Appellant, vs. KRAFTCZYK, Respondent.

*September 30—October 20, 1903.*

*Wills: Probate: Prior application as a bar: Limitations: Who may apply for probate: Grantee of devisee: Mistake in description of land: Evidence: Due execution: Mental capacity: Appeal from county court: Dismissal for delay in transmitting papers.*

1. Failure of the county court to act upon a petition for the probate of a will does not bar a subsequent application for probate.
2. Lapse of time is no bar to proceedings for probate of a will in order to establish title to real estate.

Hanley v. Kraftczyk, 119 Wis. 352.

3. One claiming title by deed from the devisee of land has a right to apply for probate of the will.

4. One to whom land has been conveyed by the devisee and her husband is not estopped from claiming title under the will and such conveyance by the fact that the husband had, prior to the conveyance, obtained a tax deed of the land.

5. Refusal to dismiss an appeal duly taken from the county court, merely because the record and appeal papers were not transmitted to the circuit court within the time limited by sec. 4033, Stats. 1898, was not error, in view of the authority given by sec. 2831 to allow such transmission after the time so limited, especially where the motion to dismiss was not made until after the papers had been transmitted and was based solely on the ground that the appeal "was not taken in due time or according to the provisions of the statutes."

6. A devise of land described it as being in section 21 and bounded on one side by a certain railroad and on another by lands of certain persons. There was no land in section 21 so bounded; the testator never owned or occupied any land in that section; and the description was otherwise so indefinite and uncertain as not to apply to any specific land in that section. The testator did, however, own and occupy, at the time of his death, land in section 22, answering in all other respects to the description in the will. *Held*, that evidence of these facts was admissible and sustained a finding construing the will as devising the land in section 22.

7. The evidence in this case (stated in the opinion) is *held* to sustain findings of the trial court that a will was duly executed, and that the testator at the time was of sufficient mental capacity and free from undue influence.

'APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed.*

This is an appeal from the judgment of the superior court of Milwaukee county reversing a judgment of the county court refusing to admit the will of James Hanley to probate, and remitting the cause to the county court with directions to admit the will to probate. It appears from the record and is undisputed, or found by the court, in effect, that the testator executed his last will and testament September 12, 1872, wherein and whereby he bequeathed to his son $100 and to his daughter $50, and devised certain real estate, therein de-

scribed, to his wife, Johanna, and named her therein as executrix of his will; that the testator died September 13, 1872; that November 30, 1872, the widow, Johanna, presented to the county court her verified petition, praying that such will be proved and admitted to probate. February 19, 1874, Johanna married Cyrus J. Dodge. November 9, 1881, Cyrus J. Dodge got a tax deed on the land so devised to Johanna. October 31, 1882, Cyrus J. Dodge and his wife, the said Johanna, conveyed the land so devised, by warranty deed, with full covenants, to the defendant in this action. January 18, 1899, the defendant in this action presented to the county court his petition stating the facts mentioned, and others, and praying that the will be proved and admitted to probate. Thereupon the plaintiff, claiming under the heirs at law, filed objections to such probate. October 4, 1899, and after proofs and hearing, the county court held that the defendant was estopped from claiming title under the will, and that the defendant had no interest in the estate of the testator which enabled him to apply for probate, and ordered and adjudged that such application be denied; and thereupon the defendant appealed therefrom to the circuit court.

April 21, 1900, the plaintiff moved the court to dismiss such appeal, which motion was denied by the circuit court, Judge Johnson presiding. The case was thereupon tried in that court before Judge Johnson, who on April 25, 1900, reversed such judgment of the county court, but Judge Johnson died before the entry of judgment. Thereupon the venue was changed by stipulation to the superior court, and the cause was re-tried in that court, and after such trial, and on July 9, 1901, that court made and filed findings of fact and conclusions of law, wherein it was found, as matters of fact, in addition to those stated, in effect, (4) that the will was duly executed; (5) that at the time of its execution the testator was of sufficient mental capacity to make a will; that no

undue influence was exercised by any person upon him to procure its execution; (7, 8, 9) that through mistake the premises devised were described as being in section 21 instead of section 22, which was the only section in which the testator owned any land; and that in that section he owned land which otherwise answered the description of the land devised, and upon which land the testator and his wife, Johanna, had their homestead at the time of the testator's death; and that Johanna continued to reside thereon until October 31, 1882, when she and her husband conveyed the same to this defendant, who thereupon entered into the possession of the premises so devised, and has continually occupied the same ever since, except portions thereof, which he has sold to other parties.

And as conclusions of law the court found that upon the death of the testator all his right, title, and interest in such premises vested in Johanna by virtue of the will; that the same passed from her to the defendant by virtue of the deed from her and her husband to him, mentioned, and that the defendant thereby acquired such interest in the premises as to enable him to apply for the probate of the will; that such application should be granted, and the will should be admitted to probate. And it was therein ordered that the judgment of the county denying the defendant's application for the probate of the will be, and the same was thereby, reversed; and it was further ordered that said will be admitted to probate, and that the matter be remitted to the county court with directions to admit the will to probate. From the judgment entered accordingly the plaintiff appeals.

For the appellant there was a brief by *Charles H. Phillips* and *Doerfler, McElroy & Eschweiler,* and oral argument by *F. C. Eschweiler* and *Mr. Phillips.*

For the respondent there was a brief by *La Boule & Hunt,* and oral argument by *F. S. Hunt.*

CASSODAY, C. J.    Numerous technical objections are raised
to the proceedings.    The testator died September 13, 1872,
leaving a will in which he devised his homestead to his widow,
Johanna.    On the same day Johanna filed the will in the
county court.    Two and a half months afterwards she peti-
tioned the county court to have the will proved and admitted
to probate.    At the time the testator died he and his wife,
Johanna, were living upon the premises so devised; and she
continued to live thereon, for a time as a widow, and subse-
quently with her second husband, until October 31, 1882,
when she joined with her husband in conveying the same by
warranty deed with full covenants to the defendant, and ever
since that time the defendant has been in such possession.

1. It is claimed that the defendant has no interest in the
proceedings nor standing in court.    A will is a muniment of
title, but in this state and some others, in order to "be effect-
ual to pass either real or personal estate," it must be "duly
proved and allowed in the county court."    Sec. 2294, Stats.
1898.    When so admitted to probate, it relates back to the
time of the death of the testator, and is to be treated as speak-
ing from that moment.    *Flood v. Kerwin,* 113 Wis. 680, 89
N. W. 845, and cases there cited.    There is no ground for
claiming that the failure of the county court to act upon the
petition of the widow, filed November 30, 1872, is a bar to
the action taken in 1899.    "A will devising lands may be ad-
mitted to probate at any time after the death of the testator."
*Haddock v. B. & M. R. R.* 146 Mass. 155, 160, 15 N. E.
495.    In that case the will was not admitted to probate until
more than sixty years after the death of the testator.    That
case followed a former case, wherein it was said that, "if a
will can be found, it may be proved in the probate office at
any time, in order to establish a title to real estate."    *Shum-
way v. Holbrook,* 1 Pick. 114, 117.    So it has been held in
that state that "whoever has a right to offer a will in evi-
dence, or to make title under it, may insist on having it

proved." *Stebbins v. Lathrop,* 4 Pick. 33, 42. The defendant, claiming title by deed from the devisee named in the will and her husband, certainly had a right to insist on having the will admitted to probate. The fact that such husband had obtained a tax deed on the land did not estop the defendant from claiming title under the will and the conveyance from the devisee. The claim that the defendant is barred from insisting upon the probate of the will by reason of the statutes of limitation is without foundation.

2. Error is assigned because the court refused to dismiss the appeal from the order and judgment of the county court denying the defendant's application for the probate of the will. The statutes gave the defendant sixty days within which to appeal from such order and judgment. Secs. 4031–4033, Stats. 1898. It is conceded that the requisite notice was given, and the requisite undertaking was filed, and the order of the county court allowing the appeal was made within the time thus prescribed, and on or before December 1, 1899. The only objection is that the appeal papers and record were not filed in the circuit court until March 1, 1900. The last section of the statute cited required the county judge within twenty days after the appeal was taken to "file in the circuit court a certified copy of the record and proceedings appealed from, together with the notice of appeal and undertaking, and proof of service of the notice of appeal on the adverse party, according to the order of the county court." Sec. 4033, Stats. 1898. Should the appeal have been dismissed merely because the records and papers were not transmitted to the circuit court within the time required by that section? That court certainly had jurisdiction of the case by virtue of the appeal taken. *Congregation v. Hellstern,* 105 Wis. 632, 81 N. W. 988. The statute expressly authorized that court, in its discretion, and for good cause shown, and upon such terms as might be just, to allow such records and papers to be so transmitted to the circuit court "after the time limited"

therefor had expired. Sec. 2831, Stats. 1898. Motions are frequently made in this court to dismiss appeals on the ground that the records and papers have not been transmitted to this court within the time required. But such motions have generally been denied whenever the records and papers are here at the time of hearing the motion. In the case at bar the motion to dismiss the appeal was not made until a month after the records and papers had been filed in the circuit court. Besides, that motion was not made on the ground of such failure to so transmit the records and papers within the time required by statute, but solely on the ground that the appeal "was not taken in due time or according to the provisions of the statutes." The facts stated show that the ground upon which the motion was so based was without foundation. We find no error in refusing to dismiss the appeal.

3. Error is assigned because evidence was admitted to prove that by mistake the lands described in the will were in fact located in section 22 instead of section 21, as stated in the will. The description in the will of the lands so devised to the wife is as follows:

"A part of the southwest quarter bounded northeast by the railroad of the Milwaukee & St. Paul Co., west by Hapman and Harwood, being in section 21, town 7, range 21, containing 8 acres of land, being situated in the county of Milwaukee and state of Wisconsin."

The evidence showed, and the court found, in effect, that there were no lands so bounded in section 21, but that there were lands so bounded in section 22, and that the same were owned and occupied by the testator as his homestead at the time of his death; that the testator never owned or occupied any lands in section 21; and that there were no lands in that section which were bounded on the northeast by the railroad of the Milwaukee & St. Paul Company, and on the west by lands owned by Hapman and Harwood. Of course, it is incompetent for a court to reform a will by changing its lan-

guage or adding provisions not written therein, or to prove by extrinsic evidence some supposed intention not expressed in the will, nor fairly implied therefrom, when construed in the light of all surrounding circumstances. *Sherwood v. Sherwood,* 45 Wis. 357; *O'Hearn v. O'Hearn,* 114 Wis. 432, 90 N. W. 450, and cases there cited. But where there is a latent ambiguity in the language of the will, or the will contains inconsistent provisions, extrinsic evidence is admissible to enable the court to ascertain and give effect to the intention of the testator as expressed in the will, when read in the light of all the surrounding circumstances as they existed at the time the will was executed. *Morgan v. Burrows,* 45 Wis. 211; *Sherwood v. Sherwood,* 45 Wis. 357; *Scott v. Neeves,* 77 Wis. 312, 45 N. W. 421; *O'Hearn v. O'Hearn, supra.* A will or "deed with a description otherwise uncertain should be construed with reference to the actual rightful state of the property at the time of its execution, and extrinsic evidence of that state is admissible to aid in the construction." *Whitney v. Robinson,* 53 Wis. 309, 10 N. W. 512; *Docter v. Hellberg,* 65 Wis. 421, 27 N. W. 176; *Mills v. C. & N. W. R. Co.* 103 Wis. 199, 79 N. W. 245. Here the lands devised are described in the will as being bounded by three fixed and certain visible objects, to wit, the railroad, mentioned, on the northeast, and by Hapman and Harwood on the west. Such are the boundaries of the eight acres owned and occupied by the testator as a homestead at the time of his death. There were no lands answering such calls in section 21 at the time of the execution of the will, but there were such lands, then owned and occupied by the testator, answering such calls in section 22. The testator owned no lands in section 21, and the description in the will is so indefinite and uncertain as not to apply to any specific land in that section. Certainly the devise is not to be frustrated by the mere false statement that the lands are in section 21 instead of section 22. *Kennedy v. Knight,* 21 Wis. 340; *Du Pont v. Davis.* 30 Wis.

170; *Paine v. Benton,* 32 Wis. 491; *Sherwood v. Sherwood,* 45 Wis. 364; *Madison v. Mayers,* 97 Wis. 413, 414, 73 N. W. 43. We must hold that the findings of the court as to the description of the lands devised are supported by competent evidence.

4. It is strenuously contended that the findings of the court to the effect that the will was duly executed, and that the testator was at the time of sound mind and free from undue influence, are contrary to the clear preponderance of the evidence. The will purports to have been executed twenty-nine years before the trial. The man who drew it (Louis Hildebrand) was a justice of the peace when he drew the will, and was eighty years of age at the time of the trial. He testified to the effect that he knew the testator, and remembered having drawn a will at his house; that his recollection in respect to the will was pretty poor; that the will shown him was in his handwriting, and that he signed as a subscribing witness; that he could not tell at whose request he drew the will; that he went to the house at the request of the testator's wife; that the testator was sick at the time and said nothing; that he drew the will, and then read it to the testator, and explained it to him, and that the testator approved of it by bowing his head; that in his opinion the testator knew the business transacted; that he did not remember exactly what took place, except as he remembered his practice; that the writing was correct in every respect; that the attestation clause was correct, and states the facts that took place there at that time; that his daughter and her intended husband were also subscribing witnesses to the will; that he got the contents of the will from the testator's wife; that the testator was sick, and said nothing, and was an habitual drunkard. If there was no other evidence as to the execution of the will except what was remembered and testified to by Mr. Hildebrand, then there would be much force in the claim that the facts bring the case within the ruling of this court in *Will of Downing,*

118 Wis. 581, 95 N. W. 876. There is, however, this difference, that in that case there was an absence of the requisite facts as to the execution of the will, whereas here there is an absence of the memory of such facts by the particular witness named, and yet he testified that the attestation clause correctly states the facts that took place there at the time the will was executed. If that is true, then the instrument "was signed, published, and declared by the said testator to be his last will and testament, in the presence of" the three subscribing witnesses, who signed their names thereto "at his request, as witnesses, in his presence and in presence of each other." As recently held by this court, "the proper attestation of a will by witnesses raises a strong presumption of due execution, which can only be overcome by clear and convincing proof to the contrary." *In re Gillmor's Will,* 117 Wis. 302, 94 N. W. 32, and cases there cited. But it is unnecessary to rest upon such presumptions. The subscribing witness, Mrs. Amelie Voss Hinrichsen, testified to the effect that she went to the house of the testator with her father; that the testator told him that he was the one who wanted to make a will; that he said he had no objection to the three subscribing witnesses; that he wanted his wife to be his sole heir; that the will was drawn there in the presence of the testator; that the will was read to him before it was executed, and that the testator fully understood its contents; that in her opinion he was at the time of sound mind; that there was no influence used to induce him to make the will as he did, except, perhaps, her kindness to him; that, after the testator signed the will by making his mark, it was said in the presence of the testator that "we three should sign as witnesses, and we thereupon did sign our names" thereto as subscribing witnesses in the presence of the testator, who was "feeble, but perfectly conscious at the time." The other subscribing witness was seventy-three years of age, and had lost his eyesight and had poor memory; but, so far as he remembered the transaction,

he corroborated his wife.  We must hold that the evidence is sufficient to sustain the findings of the court as to the due execution of the will, the mental capacity of the testator at the time of such execution, and that he was free from any undue influence at the time of such execution.

*By the Court.*—The judgment of the superior court of Milwaukee county is affirmed.