Estate of Pierce: Battles, Administrator, Appellant, vs. Hackett, Executor, Respondent.

*February 10—May 9, 1922.*

*Wills: Construction: Declarations of testator as to his intentions: Gifts individually or to a class: Securities as embracing corporate stocks: Residuary legatee as beneficiary of lapsed legacy.*

1. In an action to construe a will, involving the question as to whether property was devised to a legatee individually or as a member of a class, testimony as to statements by the testator to the scrivener as to his intentions is not admissible.

2. Generally wills are to be interpreted according to their terms, and their meaning cannot be changed by parol declarations of the testator to scriveners or witnesses.

3. In ascertaining whether a gift was to a legatee individually or as a member of a class, the controlling consideration is the intention of the testator as expressed in the will.

4. Where the will devised the residue of testator's estate "to my nephews, nieces, and half-brother, to be equally divided between them and their heirs, share and share alike, the child or children of a deceased child taking the share which his, her, or their parents would have taken," the gift to the half-brother is considered to be a gift to him individually, while the gifts to the nephews and nieces were gifts to them as members of a class.

5. A bequest in such will of the "rest, residue, and remainder of my estate, such as moneys, notes, mortgages, bonds, and all other securities whatsoever," includes corporate stock, the word "securities" being generally used so as to embrace corporate stock. *Will of Stark,* 149 Wis. 631, followed.

6. Where testator, by the sixth paragraph of his will, devised the residue "of my estate, such as money, notes, mortgages, bonds, and all other securities whatsoever" to named persons, and by the following paragraph devised "all the rest, residue, and remainder of my personal property and estate" to another person, the share bequeathed to a legatee mentioned in the sixth paragraph passed, on the lapse of the legacy because of the death of such legatee, to the legatee named in the seventh paragraph.

Appeal from a judgment of the county court of Sauk county: James H. Hill, Judge. *Modified and affirmed.*

For the appellant there was a brief by *C. M. LaMar* of Baraboo, attorney, and *Richmond, Jackman, Wilkie & Toebaas* of Madison, of counsel, and oral argument by *Harold M. Wilkie* and *Ralph W. Jackman.*

For the respondent there was a brief by *Olin, Butler, Thomas, Stebbins & Stroud* of Madison, and oral argument by *H. H. Thomas.*

JONES, J.　This is an appeal from a judgment construing the will of George W. Pierce by the administrator of the estate of Mandilla L. Atkinson, deceased, residuary legatee.

The will in question was executed on August 14, 1914. The first five paragraphs provided for bequests to Mandilla L. Atkinson and her daughters as follows: to M. L. Atkinson and Mary Martiny, $500 each; to Emily Wilder, Nellie Getchell, and Fanny Getchell, $200 each. The remainder of the will is as follows:

"Sixth. All the rest, residue, and remainder of my estate, such as moneys, notes, mortgages, bonds, and all other securities whatsoever, I give, devise, and bequeath to my nephews, nieces, and half-brother, to be equally divided between them and their heirs, share and share alike, the child or children of a deceased child taking the share which his, her, or their parents would have taken.

"Seventh. All the rest, residue, and remainder of my personal property and estate I give, devise, and bequeath to M. L. Atkinson of Delton, Wisconsin."

The testator died February 20, 1920. His estate consisted of mortgages, bonds, and certificates of deposit of the approximate value of $20,000, fifty shares of the preferred stock of the American Radiator Company, of the par value of $5,000, and a few chattels such as a buggy, harness, etc. Deceased had acquired the stock in the Radiator Company subsequently to the making of his will by a bequest from a half-brother who died June 23, 1917.

It appears that the testator had made his home at the

house of M. L. Atkinson for over sixty years. He had never married. His only relatives were the nieces, nephews, and their children, and the half-brother mentioned in the will.

The court found as facts, in addition to those above stated, that it was the intention of the testator to give to M. L. Atkinson $500 and a buggy, harness, and other property of like nature, which testator had owned and which had been in use on the farm where he resided with Mrs. M. L. Atkinson; that after the payment of the specific bequests in the first five paragraphs it was his intention that all the remainder should pass to the relatives mentioned in the sixth paragraph; and that he also intended, in case of the death of one or more of the members of the class, that the remaining members of the class should take that part which otherwise would have been taken by the deceased in case he had survived the testator. He held as conclusions of law that the sixth clause of the will created a class to be determined as of the date of the death of the testator; that the bequest to the half-brother passed to the members of the class; and that the fifty shares of stock of the American Radiator Company are included in the property described in the sixth paragraph, and passed to the members of the class therein created.

Against the objection of the appellant, the trial court received considerable testimony as to statements of the testator to the scrivener of the will, supposed to explain the intention and the real meaning of the will. Among other declarations was one that he intended that the property mentioned in the sixth provision should be divided equally among the surviving legatees in the event that one of them should die. This testimony did not come within the exception that declarations of the testator are sometimes admitted where the language of the will is equally applicable to two or more persons or objects and the question is which one was intended to be designated in the will. No question of

undue influence was involved.   It is clear to us that under the circumstances the admission of such testimony was repugnant to the general rule of evidence that the written instrument must be interpreted according to its terms.   Wills are formal and solemn documents, often diverting from the natural course of inheritance large estates.   They are presumed to have been made after due deliberation and to express the full and final intention of the testator.   Since there would be little security in the right to transfer property by testamentary devise or bequest if the meaning of the will could be changed by the parol declarations of the testator to scriveners or witnesses, the rule should be firmly upheld unless the case comes within one of the recognized exceptions.   *Estate of Judson,* 168 Wis. 361, 170 N. W. 254; *Hanley v. Kraftczyk,* 119 Wis. 352, 96 N. W. 820; *Scott v. Neeves,* 77 Wis. 305, 45 N. W. 421; *Morgan v. Burrows,* 45 Wis. 211; *Dew v. Kuehn,* 64 Wis. 293, 25 N. W. 212; *Canfield v. Bostwick,* 21 Conn. 550; *Jackson v. Sill,* 11 Johns. 201; *Massaker v. Massaker,* 13 N. J. Eq. 264; *Kirkland v. Conway,* 116 Ill. 438, 6 N. E. 59.   There is language in the decision made by the trial court which seems to indicate that the court was influenced by this testimony.

In the construction of the will one important question is whether the gift to the half-brother was an individual gift, or whether it was part of a single gift to a class consisting of himself and the nephews and nieces, and whether the share of the half-brother passed to the other members of a class or to the general residuary legatee, M. L. Atkinson. The respondent contends that the will should be construed as if the words "my blood relatives" were inserted in the sixth paragraph, and that it was the plain intention that all persons not relatives of the testator should be excluded from taking any of the property mentioned in that paragraph.

On the other hand, it is claimed by appellant that the gift to the half-brother is not part of a gift to a class but an individual gift; that since the legacy lapsed, it passed to the

residuary legatee named in the seventh clause.    Hundreds
of cases were cited and quoted from in the briefs of counsel,
from the early English cases as well as modern decisions.
These illustrate the infinite variety of cases in which the
question has come before the courts, and also the impos-
sibility of declaring any invariable or satisfactory rule by
which the question may be determined in particular cases.
Of course the controlling purpose is to ascertain the inten-
tion of the testator as expressed in the document to be con-
strued.    It is conceded in most of the cases that no hard-
and-fast rule can be laid down for determining whether a
will has created a class or classes, and we shall only attempt
to point out some of the reasons which lead us to the con-
clusion that the gift to the half-brother was to him indi-
vidually and not as a member of a class.

The sixth clause contains words of present devise and
bequest, not a direction to divide in the future, and contains
no words of survivorship.    It is not a gift to the persons
designated and their survivors, but to be "divided equally
between them and their heirs."    Although the half-brother
was to receive the same share as each of the nephews and
nieces, it does not necessarily follow that he belonged to
the same class within the meaning of the rule contended
for.    The nephews and nieces bore a definite relation to the
testator and to each other.    The half-brother bore a dif-
ferent relation to them and to the testator.    The nephews
and nieces formed such a group, having a common relation
to the testator and to each other, as often exists in cases
where the courts have held that a class was created within
the meaning of the rule.    The nephews and nieces have no
common characteristics with the half-brother except that
they all receive the same amount, in the sixth clause, all are
named as residuary legatees, and they were all blood rela-
tives.

Suppose the language of the will had been "to my nephews
and nieces and to my brother" or "my son," followed by

Estate of Pierce, 177 Wis. 104.

the other language used. The logic of respondent's contention would seem to require that all should be treated as belonging to a class and that the consequences incident to such construction would follow. We do not believe that the decisions would justify such a holding. Nor do we think that they uphold the inclusion of the half-brother in a class with the nephews and nieces.

There is another circumstance which we think entitled to consideration in determining this question. When the will was executed the brothers and sisters of the testator were all dead and there could be no increase in the members of nephews and nieces. At the time of the execution of the will only four of the nephews and nieces were living. Seven had died and six of them had left issue, and this situation continued to the death of the testator unchanged. The clause providing that "the child or children of a deceased child taking the share which his, her, or their parents would have taken" can have no reference to the half-brother, and in this respect he was differentiated from the other legatees. There are many decisions which in our judgment support the view we have taken. Without discussing, we cite a few of them. *Palmer v. Jones,* 299 Ill. 263, 132 N. E. 567; *Blackstone v. Althouse,* 278 Ill. 481, 116 N. E. 154; *Spencer v. Adams,* 211 Mass. 291, 97 N. E. 743; *Garnier v. Garnier,* 265 Pa. St. 175, 108 Atl. 595; *McMaster v. McMaster's Ex'rs,* 10 Gratt. (Va.) 275; *Maddox v. State,* 4 Har. & J. (Md.) 539; *Will of Griffiths,* 172 Wis. 630, 179 N. W. 768.

A case chiefly relied on by respondent's counsel is *Manier v. Phelps,* 15 Abb. New Cas. (N. Y.) 123. Although the facts in that case somewhat resemble those in the case before us, there is this important distinction: the court construed the will as creating a class, but was evidently greatly influenced by the fact that intestacy would result if the other construction were adopted. The same is true of another case cited by respondent's counsel, *Will of Waterbury,* 163

Wis. 510, 158 N. W. 340.  In the present case there is not only the special residuary clause in paragraph 6, but also the general residuary clause in paragraph 7, so that no claim can be made that intestacy would result as to any part of the estate.

Although we do not agree with the trial court that it was the intention of the testator to give the portion of his estate embraced within the general terms of clause 6 to his blood relatives as a class, we have come to the conclusion that it is the true construction that the nieces and nephews should take as a class.  There is such a common relationship between them and between them and the testator, and they are so grouped together in the descriptive clause of the will, that in our opinion they formed a class within the meaning of that term in the construction of wills.

Another question presented is whether the clause, "all the rest, residue, and remainder of my estate, such as moneys, notes, mortgages, and bonds, and all other securities whatsoever, I give, devise and bequeath," includes the fifty shares of American Radiator stock, inventoried at $3,950.  It is claimed by appellant's counsel that this stock was property of a different character from that mentioned in this clause and that it passed to M. L. Atkinson by the general residuary clause.  On the other hand, it is claimed that the radiator stock was included in the clause "and all other securities whatsoever."  In the briefs of counsel there is considerable discussion of the degrees of intimacy of the testator with the Atkinson family on the one hand, and his nephews and nieces on the other.  Other evidence of extrinsic facts was offered by both parties which we shall not discuss, since we believe the case is ruled by another case decided in this court.  *Will of Stark,* 149 Wis. 631, 134 N. W. 389.  In that case it was said (p. 657) :

"While the word 'securities,' construed strictly, does not cover corporate stock, but rather bonds or evidences of debt, it has undoubtedly acquired a much broader meaning

by general usage. . It is said in 25 Am. & Eng. Ency. of Law (2d ed.). at page 180: 'The term in its broadest sense embraces bonds, certificates of stock, promissory notes, bills of exchange, etc.' The Century Dictionary defines 'securities' as 'evidences of debt, or of property, as a bond or certificate of stock.' See 1 Cook, Corp. (6th ed.) secs. 14 and 305, to the same effect. Indeed it may be said, we think, to be matter of common knowledge that the word is generally used in this broad sense."

As we construe the will, the bequest to the half-brother was a separate and individual gift not included within any class; the nephews and nieces did constitute a class and the distribution should be made accordingly; the radiator stock is included in the sixth clause and should be distributed like other property in that clause. Since the legacy to the half-brother lapsed, the share bequeathed to him in the sixth clause should be distributed under the general residuary clause, seven, to M. L. Atkinson.

*By the Court.*—Judgment modified as indicated in the opinion, and as so modified affirmed, with costs in this court to both parties, to be paid by the estate.