STATE, Plaintiff, v. GULBANKIAN (Vartak), Defendant.

*No. State 38. Argued March 30, 1972.—Decided May 4, 1972.*
(Also reported in 196 N. W. 2d 730.)

For the plaintiff there was a brief by *Rudolph P. Regez* of Monroe, attorney, and *Warren H. Resh* of Madison of counsel, and oral argument by *Mr. Regez.*

For the defendant there was a brief by *Flynn, Flynn & Flynn* and *Robert W. Weber,* all of Racine, and oral argument by *Gerald T. Flynn.*

PER CURIAM. This action to discipline Miss Vartak Gulbankian arises out of the drafting of the will of Pearl Kradwell. Miss Gulbankian has practiced law in Racine for about thirty-six years and has enjoyed an extensive probate practice. Pearl Kradwell aged seventy-

six, a longtime friend of the Gulbankian family, was brought to the office of Vartak Gulbankian by her sister Miss Akabe Gulbankian. Vartak Gulbankian drafted the will of Mrs. Kradwell in which there was a specific bequest to Akabe Gulbankian of $10,000. Akabe Gulbankian was also designated executrix and in her failure to so act, Vartak Gulbankian was named successor executrix. The residuary clause bequeathed the remainder of the estate, which amounted to roughly one half of the $180,000 estate, to the executrix "to distribute the same to and among my heirs, named legatees, and such other persons she may deem deserving and for benevolent objects, and to such of them and in such proportion as she shall deem just and proper, and her decision upon such matters shall be final, conclusive and binding upon all parties."

Pearl Kradwell died suddenly two days after the will was executed. The will was offered for probate by Vartak Gulbankian. Janet Nelson Ross, a daughter of a deceased brother of Mrs. Kradwell, filed objections to the will and a petition for the construction of the residuary clause. The will was admitted to probate, but the residuary clause was held void for lack of ascertainable beneficiaries. The decision was affirmed by this court in *Estate of Kradwell* (1969), 44 Wis. 2d 40, 170 N. W. 2d 773.

The complaint against Vartak Gulbankian claims she acted in an unprofessional manner in drafting the will because it gave a substantial bequest to her sister; there were reasonable grounds to anticipate there would be a will contest; the residuary clause and the bequest created a conflict of interest in Miss Gulbankian; and drafting of such a will undermined the public's confidence in the integrity of the legal profession. Miss Gulbankian in defense argues the provisions of the will were consistent with the wishes of the testatrix; that there was a long and intimate friendship between Pearl

Kradwell and her sister Akabe Gulbankian and the gift to Akabe of $10,000 was not unnatural in fact under the circumstances; that in four previous wills Mrs. Kradwell had made a bequest to Akabe; no will contest was anticipated; and the public's confidence in the legal profession had not been damaged.

The matter was referred to Honorable JOHN K. CALLAHAN as referee to hear the testimony and to make recommendations. The referee in his report to this court found no evil intent on the part of Vartak Gulbankian in drafting the will in respect to the bequest and the invalid residuary devise. While he said the drafting of the will should have been turned over to another attorney, he thought the circumstances in mitigation ruled out suspension or disbarment. We do not agree. Vartak Gulbankian should be suspended from the practice of law for drafting the will of Pearl Kradwell.

It is claimed the language of *State v. Horan* (1963), 21 Wis. 2d 66, 123 N. W. 2d 488, permits such a will to be drawn. It is true in *Horan* we stated there were some exceptional cases in which a lawyer could draft a will for his wife, his children, parents, or other close relatives in which he was a beneficiary and stands in the relationship to the testator as one being a natural object of the testator's bounty, but in respect to drafting a will for a personal friend, we stated that if there are any circumstances either because of preferential treatment in relationship to others or if the bequest is more than a token or modest bequest, the inference of undue influence arises which would reasonably lead the public to question the integrity of the legal profession. We distinctly stated in *Horan* that a lawyer should not draw a will under circumstances which give rise to the inference of undue influence.

Although the referee has found no ill intent on behalf of Vartak Gulbankian in preparing this will, we find a

bequest of $10,000 is not a token or modest bequest in an estate of $180,000 and the drafting of a residuary clause, which any lawyer should know would be invalid, and which gave unlimited power of disposition to the drafter's sister, to be unjustifiable and reasonable grounds to cause the public to lose confidence in the integrity of the legal profession. The language of *Horan* does not allow the drafting of this will. Likewise, *State v. Eisenberg* (1965), 29 Wis. 2d 233, 138 N. W. 2d 235, which was also decided before the *Kradwell* will was drafted, should have warned Vartak Gulbankian. It is no defense that the will represents the wishes of the testatrix; this argument goes to the question of undue influence, not to whether the attorney should draft the will. The argument the will represents the testatrix' wishes was rejected in the *Eisenberg Case.* The long and intimate frendship between Pearl Kradwell and Akabe Gulbankian, and the Gulbankian family, while important to justify and explain a $10,000 gift to Akabe, does not justify Vartak Gulbankian's drafting such a will. It is argued no court contest was anticipated. It is probably true there was no known dissatisfied relative of Mrs. Kradwell; but certainly the residuary clause was of such an unusual nature that at least it would raise some question among the heirs at law of Mrs. Kradwell as to its validity and in fact did. Sometimes the long-standing friendship and confidential relationship between a client and an attorney serves as an effective opportunity in the eyes of others for exerting an undue influence by the attorney upon the testator. Such strength of implication might not arise between an attorney and a client who is relatively a stranger. An attorney must be as careful to avoid the appearance of evil as he is to avoid evil itself.

Although this will could not be drawn under *Horan,* we point out the scope of the language of that case

was further restricted in *State v. Collentine* (1968), 39 Wis. 2d 325, 159 N. W. 2d 50. *Collentine* is not applicable to these facts since it was decided after the Kradwell will was drawn but its language apropos: "When the will was probated, it was inevitable that the public and the press concluded that what appeared on the face of the will to be a large bequest to the lawyer-draftsman was the result of undue influence. Such a conclusion, though erroneous, was the natural consequence of Collentine's actions." To avoid such misunderstanding, we stated a lawyer may draft a will in which he is a beneficiary "only when he stands in relationship to the testator as the natural object of the testator's bounty and where under the will he receives no more than would be received by law in the absence of a will." We extend this concept to the drafting of a will in which a close relative is a beneficiary, such as a sister of a close-knit family as the Gulbankians were. We again repeat what we said in *State v. Beaudry* (1971), 53 Wis. 2d 148, 191 N. W. 2d 842, "If the attorneys will read our prior cases on this subject with an unbiased eye, they will find adequate guidelines. An attorney who sees how close he can come at the line of demarcation always runs the risk of overstepping."

Miss Vartak Gulbankian overstepped the boundary line and should not have prepared the will of Pearl Kradwell under the circumstances. We think she should be suspended and should pay part of the costs of this proceeding. Upon the expiration of sixty days from May 5, 1972, Miss Vartak Gulbankian may apply to this court for termination of the suspension. During the period of suspension she should not be in her office.

*It Is Therefore Ordered And Adjudged* that the license to practice law in this state of Vartak Gulbankian is suspended for a minimum period of sixty days and until restored by this court upon proper application for reinstatement. Vartak Gulbankian shall pay the costs

of this proceeding not exceeding $500, and such costs shall be paid before an application for reinstatement is made.

*It Is Further Ordered* that Vartak Gulbankian notify her clients now represented by her in all matters involving the practice of law or all matters pending in any court of this state that her license to practice law in this state is suspended; and that the State Bar of Wisconsin notify the courts of record of these orders by sending each a copy thereof.